**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFREY CONNOR KASEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 1957 |
| v. | ) |
| | ) Hon. Joan H. Lefkow |
| OFFICER G.J. McCULLOH, STAR #454, | ) |
| OTHER UNKNOWN NORTHFIELD | ) |
| POLICE OFFICERS, and the VILLAGE | ) |
| of NORTHFIELD, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Jeffrey Kasey filed an amended complaint against Officer G.J. McCulloh and the Village of Northfield under 42 U.S.C. § 1983 for false arrest and excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. He also brings a state law malicious prosecution claim against McCulloh and seeks indemnification from the Village of Northfield. Before the court is defendants' motion for summary judgment. For the following reasons, the motion [#48] is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine

issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## BACKGROUND[1]

On February 2, 2008, Kasey, at the time a seventeen year old high school student, attended a birthday party at a friend's house in Northfield, Illinois. Attendees were drinking alcohol, and Kasey admits to having had approximately three beers. Around midnight, Courtney Anderson, a friend of Kasey's, left the party to tell a cab waiting in the driveway that another guest would be out shortly. McCulloh, a Northfield police officer, was patrolling in the area at the time when he saw the cab and a female, presumably Anderson, walking out to it. Suspecting a party, as there were more cars parked on the street than usual, McCulloh parked near the house. Shortly thereafter, Kasey came outside the house to call his father. He saw Anderson speaking to someone inside a car parked about fifty feet from the house. He headed toward the car,

---

[1] The facts set forth in this section are derived from the statements of fact submitted by the parties and are taken in the light most favorable to Kasey, the nonmovant.

believing it to be the aforementioned cab. When he was about eight to ten feet away from the car, he realized it was instead a Northfield Police car and turned back toward the house.

The parties dispute what happened next. McCulloh claims he observed an intoxicated minor, Kasey, approaching. He states that Kasey's face appeared droopy and flaccid, that his eyes were glassy and bloodshot, and that he sauntered up to the vehicle. McCulloh then exited his car, asked Kasey to approach, and, after Kasey said he was going back inside the house to wait for his dad, ordered Kasey to stop. When Kasey did not stop, McCulloh grabbed Kasey's elbow. Kasey pulled away, leading McCulloh to grab Kasey in a bear hug and tell him he was under arrest for underage drinking. While held by McCulloh, Kasey was yelling and moving around. After about a minute, Kasey agreed to cooperate with McCulloh, at which point McCulloh loosened his grip so as to reach his handcuffs. Kasey broke free and began running. McCulloh, who had called for backup, ran after Kasey. After Kasey had run through several yards and jumped at least one fence, McCulloh took out his taser and flashed its light beam in Kasey's line of vision. McCulloh warned Kasey that if he continued to resist, he would be tasered. Kasey was also told to walk back toward McCulloh, who was standing on the other side of a fence, and drop to his knees when he neared the fence. At that point, another officer, Officer Brown, attempted to handcuff Kasey, who stood back up and continued to resist. McCulloh then yelled "taser" and deployed the taser. After hearing a noise indicating the taser was ineffective and observing Kasey's continued resistance to arrest, McCulloh deployed the taser a second time, which led Kasey to fall to his knees. Because Kasey would not move his arms from under his body to allow Brown to handcuff him, McCulloh deployed the taser a third time, after which Kasey was handcuffed.

Kasey, on the other hand, maintains that he did not appear at all intoxicated. He claims not to have done anything to arouse suspicion, such as walk out of the house stumbling, with a beer in hand, or smoking. Kasey states that McCulloh grabbed him, threw him against the car, lifted him off the ground, and told him he was under arrest without specifying the charges despite many questions to that end. Kasey was able to break away from McCulloh and began running. He continued to run until McCulloh fired the taser at him without warning, at which point he was immobilized. The taser was then used two more times, the third time while Kasey was facedown.

After being tasered and handcuffed, Kasey was taken to a hospital where the taser barbs were removed. He was charged with consuming alcohol as a minor, possession of marijuana, and resisting arrest. He admitted to these charges after his arrest. A breathalyzer test returned a blood alcohol level of 0.0062. Nonetheless, as Kasey was a juvenile arrested for a first-time offense, his case was diverted directly to informal supervision without any charges being brought against him in court. No finding of guilt or innocence was made, and Kasey did not contest his supervision. He subsequently had all charges and records related to his arrest expunged.

## ANALYSIS

**I.      False Arrest Claim**

To prevail on his false arrest claim under 42 U.S.C. § 1983, Kasey must establish the absence of probable cause for his arrest. *See Kelley* v. *Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Probable cause existed if "at the moment the arrest was made . . . the facts and circumstances within [McCulloh's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Kasey] had committed or was committing

4

an offense." *Beck* v. *Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *see also Thompson* v. *Wagner*, 319 F.3d 931, 934 (7th Cir. 2003). Probable cause is evaluated "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* – seeing what he saw, hearing what he heard." *Mahoney* v. *Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). "[P]robable cause demands even less than probability; it requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods* v. *City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (citations omitted) (internal quotation marks omitted); *see also Maryland* v. *Pringle*, 540 U.S. 366, 370–71, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.").

Determining whether probable cause exists is necessarily a fact-intensive inquiry. *Jones by Jones* v. *Webb*, 45 F.3d 178, 180 (7th Cir. 1995). Consequently, summary judgment is inappropriate where material facts regarding the existence of probable cause are in dispute. *See id.* ("Whether an officer had probable cause to make an arrest generally will present a question for the jury, although the court can decide it when the material facts are not disputed."); *Schertz* v. *Waupaca County*, 875 F.3d 578, 582 (7th Cir. 1989) ("While Section 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment, this is true only where there is room for a difference of opinion.").

Kasey's false arrest claim, as pleaded in the amended complaint, solely attacks his arrest for resisting a police officer. In his response to defendants' motion for summary judgment, he

5

also claims that McCulloh lacked probable cause to arrest him for consumption of alcohol by a minor. A plaintiff may not amend his complaint in response to a motion for summary judgment, however. *Griffin* v. *Potter*, 356 F.3d 824, 830 (7th Cir. 2004).

Although not properly before the court, the parties' divergent accounts of what happened when Kasey approached McCulloh's vehicle would preclude summary judgment on whether McCulloh had probable cause to arrest Kasey for underage drinking. If a jury believed McCulloh, it would be reasonable for it to find that probable cause existed: McCulloh testified that Kasey's face appeared droopy and flaccid, that his eyes were glassy and bloodshot, and that he sauntered up to the vehicle. If a jury believed Kasey that he had no observable signs of intoxication, however, it would be difficult to find probable cause.[2] It is not the court's role to determine which version of events to credit. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *Payne* v. *Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.").

This, however, does not preclude a finding that there are no disputed material facts surrounding Kasey's arrest for resisting arrest. Illinois law provides that a person commits a Class A misdemeanor when he knowingly resists or obstructs the performance of an authorized act by a police officer. 720 Ill. Comp. Stat. 5/31-1. Kasey was not authorized to resist arrest

---

[2] Whether McCulloh had reasonable suspicion to conduct a *Terry* stop, which developed into probable cause for arrest, has only been alluded to in passing by defendants. This issue would also be open to dispute and thus inappropriate for resolution on summary judgment.

even if the arrest was unlawful. 720 Ill. Comp. Stat. 5/7-7; *Chelios* v. *Heavener*, 520 F.3d 678, 688 (7th Cir. 2008). Kasey admits to fleeing from McCulloh after McCulloh told him he was under arrest. As flight constitutes resistance, this admission alone establishes probable cause.

Kasey responds that his resistance was authorized, however, as his right to act in self-defense was triggered by McCulloh's allegedly unjustified use of force against him in effectuating the initial arrest. *See People* v. *Wicks*, 823 N.E.2d 1153, 1156, 355 Ill. App. 3d 760, 291 Ill. Dec. 567 (2005) ("A person may not use force to resist arrest by a known police officer, even if the arrest is unlawful. An exception to this rule is made when the officer uses excessive force. Use of excessive force by a police officer invokes the arrestee's right of self-defense."). While Kasey may have had a defense to a charge of resisting arrest on this basis,[3] this exception to the general rule does not preclude a finding that probable cause existed. The issue for probable cause is whether a reasonable person in McCulloh's shoes, knowing what he did, would have believed that Kasey was resisting arrest by struggling with and fleeing from him. As there is no doubt that Kasey was told that he was under arrest and thereafter fled from McCulloh's custody, summary judgment is appropriate on Kasey's claim for false arrest for the charge of resisting arrest.[4]

## II. Excessive Force Claim

The force used by officers to effect an arrest must be objectively reasonable under the Fourth Amendment. *Chelios*, 520 F.3d at 689. To determine whether such force was

---

[3] The court need not determine whether McCulloh used excessive force in attempting to arrest Kasey prior to his flight to resolve the issue of probable cause.

[4] Having found for McCulloh on this claim, the court will not address whether he would be entitled to qualified immunity.

reasonable, the court must engage in a "careful balanc[ing] of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citations omitted) (internal quotation marks omitted). The court considers the specific circumstances of the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* v. *Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Reasonableness is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus* v. *Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010).

At issue is whether McCulloh's use of force in shoving Kasey against his police vehicle and deploying his taser three times was unreasonable. The parties dispute whether the initial contact was a "push" or instead a "forceful shove" that also involved McCulloh lifting Kasey off the ground. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (quoting *Johnson* v. *Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Smith* v. *City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (officer's slamming of plaintiff against the hood of his car before handcuffing him was not excessive where plaintiff appeared to be fleeing). Here, if Kasey's version of events is credited, McCulloh's actions may be found unreasonable, as Kasey claims that McCulloh grabbed him

8

unprovoked and threw him against the car. *See Clash* v. *Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."). Alternatively, if it is true that Kasey ignored McCulloh's requests for him to stop in an apparent attempt to leave, the push or forceful shove that accompanied McCulloh's attempt to restrain Kasey may have been an allowable means of effectuating an arrest. This credibility dispute cannot be resolved on summary judgment.

As to the taser use, McCulloh argues that it was reasonable as Kasey was fleeing and continually resisted arrest, it was dark, and McCulloh did not know if Kasey had a weapon and posed a risk to others. McCulloh claims that he deployed the taser three times because the first deployment was unsuccessful and, after the second deployment, Kasey refused to move his arms from under his body. Kasey again disputes McCulloh's description of the tasering and argues that the use of the taser was unreasonable in light of the minor violation at issue. Pursuant to Kasey's version of events, the first taser was deployed without warning, after which he lost control of the right side of his body. He claims to have been facedown and defenseless when the third taser was deployed.

McCulloh's initial use of the taser was not unreasonable, as Kasey was clearly ignoring McCulloh's commands and fleeing from him. *See Draper* v. *Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) ("single use of the taser gun causing a one-time shocking" in order to arrest a "hostile, belligerent, and uncooperative" individual was not excessive); *Hodges* v. *Settingard*, No. 09-1211, 2011 WL 285604, at *6 (C.D. Ill. Jan. 26, 2011) (use of taser one time to prevent plaintiff from fleeing the scene was not unreasonable). Whether the subsequent use of the taser was excessive depends on which version of events is credited. "It is well established that a

9

police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders. But that principle depends critically on the fact that the suspect is indeed subdued." *Johnson* v. *Scott*, 576 F.3d 658, 660 (7th Cir. 2009) (citations omitted); *see also Oliver* v. *Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) ("Quite simply, though the initial use of force (a single Taser shock) may have been justified, the repeated tasering . . . was grossly disproportionate to any threat posed and unreasonable under the circumstances."). A jury could reasonably conclude, believing Kasey, that the repeated tasering was excessive and disproportionate to any threat posed. *See Cyrus*, 624 F.3d at 863. Because there is a genuine issue of material fact as to whether Kasey was subdued after McCulloh deployed the taser once, summary judgment will be denied on the excessive force claim.

Alternatively, McCulloh argues that he is entitled to qualified immunity because he did not violate clearly established law in shoving Kasey or tasering him three times. Only if McCulloh's version of events is accepted would this be the case, however. It is clearly established that an officer may not use excessive force in arresting an individual, *see Holmes* v. *Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007), and cannot continue to use force when a suspect is subdued, *see Johnson*, 576 F.3d 658, 660. As the court takes the disputed facts in the light most favorable to Kasey in deciding whether McCulloh is entitled to qualified immunity, *Nanda* v. *Moss*, 412 F.3d 836, 841 (7th Cir. 2005), McCulloh cannot take advantage of qualified immunity.

### III. Malicious Prosecution Claim

In order to establish malicious prosecution under Illinois law, a plaintiff must demonstrate "(1) the commencement or continuance of an original criminal or civil judicial

10

proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick* v. *Liautaud*, 662 N.E.2d 1238, 1242, 169 Ill. 2d 504, 215 Ill. Dec. 98 (1996) (citations omitted) (internal quotation marks omitted). While no formal proceeding was ever instituted, Kasey received supervision. This arrangement, while not formally resulting in a finding of guilt, does not establish that a criminal proceeding terminated in Kasey's favor. Even where a prosecutor decides not to prosecute a case, the plaintiff must show that the case was abandoned for reasons indicative of the plaintiff's innocence. *Ferguson* v. *City of Chicago*, 820 N.E.2d 455, 460, 213 Ill. 2d 94, 289 Ill. Dec. 679 (2004). Kasey has not presented any evidence to make such a showing. In fact, it appears that diversion to supervision was an approach employed by the state's attorney's office to deal with first-time juvenile offenders. Without being able to show that the proceeding terminated in his favor, Kasey's malicious prosecution claim fails.

## IV. Indemnification Claim

The Village of Northfield seeks judgment on Kasey's indemnification claim premised on defendants' contention that McCulloh is not liable for any of Kasey's claims. As the court has found that material issues of fact remain as to Kasey's excessive force claim, summary judgment on indemnification is not appropriate.

**CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion for summary judgment [#48] is granted in part and denied in part. Judgment is entered for McCulloh on counts II and III of Kasey's amended complaint.

This case will be called for a status hearing on June 16, 2011 at 8:30 a.m. The parties are directed to engage in a sincere effort to resolve this litigation and to report on these efforts at the status hearing.

Dated: May 5, 2011   Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge